Vincent P. McCARTHY, Plaintiff,

v.

The **IOWA DISTRICT COURT FOR JEFFERSON COUNTY**, Defendant.

No. 84–1768.

Court of Appeals of Iowa.

Jan. 29, 1986.

As Corrected Feb. 13, 1986.

Vincent P. McCarthy, Sandy Hook, Conn., pro se.

Dwight James, of James & Galligan, P.C., Des Moines, and William P. Goldstein, Fairfield, for defendant.

Heard by DONIELSON, P.J., and SCHLEGEL and SACKETT, JJ.

SACKETT, Judge.

Plaintiff McCarthy petitioned for a writ of certiorari on an order finding him in contempt of court for violation of a consent judgment and permanent injunction. Plaintiff contends the trial court erred in holding he willfully disobeyed a court order and claims: (1) the underlying consent judgment and order of permanent injunction are void and therefore are not entitled to enforcement in these contempt proceedings, (2) no valid enforceable injunction exists in this matter because the enjoining court could not exercise equitable jurisdiction, (3) the enforcement of the consent judgment and the order of permanent injunction would be against public policy, (4) the video tapes introduced into evidence in this case were not properly authenticated and were inadmissible, (5) a contempt proceeding where imprisonment is a potential sanction is criminal in nature and requires certain procedural safeguards, including the right to remain silent.

McCarthy was attorney and officer for a corporation which was one of the plaintiffs in civil litigation arising out of a dispute concerning the Maharishi International University (hereafter "MIU") in Fairfield, Iowa. A recitation of the facts in this underlying action is necessary in order to understand McCarthy's citation for contempt.

In January 1983, the World Teacher Seminar, Inc. (hereafter "WTS") and Robin Carlson, founder of the corporation, filed a petition against Maharishi Mahesh Yogi, MIU, and others, claiming these defendants had deliberately attempted to injure plaintiffs' business by harassing and discriminating against MIU students and Fairfield residents who had contact with plaintiffs'

courses and teachings.[1] Among other things, plaintiffs WTS and Carlsen sought injunctive relief. Defendants counterclaimed seeking an injunction against the prosecution of plaintiffs' suit.

The parties began discussing a possible settlement of the dispute. In July 1983, a stipulation was entered into by all parties whereby the Maharishi would be asked certain questions and his answers would be determinative of the outcome of the suit. The stipulation included four questions posed by Carlsen[2] and two consent judgments. The consent judgment to be executed depended upon the responses the Maharishi gave to the four questions. The stipulation was signed by counsel for all parties. McCarthy signed as attorney for all plaintiffs and intervenors.

The Maharishi's taped responses were played in district court. The court determined the responses were adverse to plaintiffs Carlsen and WTS. The court then entered the consent judgment and order of permanent injunction which dismissed plaintiffs' petition and enjoined plaintiffs from interfering with defendants' activities. Specifically, plaintiffs could not enter MIU's premises without prior written permission from MIU administrators, could not distribute literature or communicate with people on MIU premises, could not use the MIU meditation terms or any other trademark associated with MIU nor teach the same programs which would confuse or mislead the public into associating the plaintiffs with the defendants, could not engage in any acts which would interfere with the defendants' activities and programs anywhere in the world, could not maintain offices in Jefferson County, and could not maintain facilities within two city blocks of defendants' facilities in any geographic location.

In December 1983, plaintiffs filed a petition to vacate the consent judgment. The district court found no grounds under Iowa Rule of Civil Procedure 252 which would require the setting aside or vacating the judgment. Plaintiffs did not appeal.

In January 1984, MIU filed an application claiming Carlsen, WTS, McCarthy, and others were in contempt of court for violating the consent judgment and order for permanent injunction by repeatedly entering MIU premises and distributing literature without permission and by interfering with MIU activities in other ways. A rule to show cause was issued by the district court. McCarthy was served individually and as an officer of WTS.

In plaintiffs' and McCarthy's resistance to the contempt action, they claim the consent judgment and order for permanent injunction are unenforceable. In his affidavit, McCarthy states he is one of the attorneys for the plaintiffs, that defendants did not particularize any act which McCarthy willfully committed to be held in contempt, that he makes no corporate decisions at WTS, and that all corporate decisions are made by the corporation president Carlsen.

A subpoena duces tecum was issued to McCarthy personally and as vice-president of WTS to produce "any and all video tapes, audio tapes, transcriptions, notes, memoranda, letters, publications, or other writings, documents or things" involving WTS, McCarthy, and Carlsen in Jefferson County since July 21, 1983. Plaintiffs and McCarthy filed a motion to quash and modify subpoena and a motion for protective order. The district court denied the motions.

After a hearing, the district court found McCarthy and plaintiffs Carlson and WTS

---

1. Carlsen through WTS presented public seminars in Fairfield based on his ideas and writings.

2. The four questions were:
 1. Is Robin Carlsen Enlightened?
 2. Are the Techniques for the Discovery of Grace compatible with the Transcendental Meditation and TM–Sidhi program?

3. Is Robin Carlsen's teaching in the World Teacher Seminar a violation of the purity of the teaching of the Holy Tradition of Maharishi and Guru Dev?
4. It is Maharishi's desire that Meditators, Sidhas, and Governors of the Age of Enlightenment not influenced by Robin Woodsworth Carlsen's ideas, seminars, or his techniques?

in contempt of court. The court made the following findings of fact:

1. The court has jurisdiction over the subject matter and the parties involved in this application for citation in contempt.

2. On July 22, 1983, this court approved by order, a consent judgment entered into by the parties after considerable negotiations by the parties involved in the contempt hearing before this court.

3. That the order provided for continuous jurisdiction and set out numerous acts which plaintiffs agreed not to do as well as certain acts that plaintiffs were required to do (consent judgment p. 2–4).

4. That between July 22, 1983 and March of 1984, the plaintiff, Robin Woodsworth Carlsen, was president of plaintiff, World Teacher Seminar, and made virtually all decisions concerning the actions of the corporation.

5. That during this same time period, Vincent P. McCarthy, was an officer of the corporation and acted as legal counsel.

6. Plaintiff, World Teacher Seminar, apparently was dissolved but that act does not in and of itself, negate defendants' contempt action against it or any of plaintiffs.

7. That the consent judgment which gives rise to the allegations in defendants' application is specific enough at paragraphs III (a)(b)(h) and (i) that plaintiffs knew or should have known the meaning and effect of the paragraphs.

8. The plaintiff, World Teacher Seminar, Inc., and Robin Woodsworth Carlsen, violated the terms of the consent judgment and order by the following acts:

(a) By entering upon the MIU campus without permission subsequent to July 22, 1983 (IIIa)

(b) By distributing literature on campus without permission subsequent to July 22, 1983. (IIIb)

(c) By engaging in acts which would foreseeably interfere with the functioning of MIU's activities and programs (IIIh).

(d) By maintaining headquarters or engaging in services or giving of courses in Jefferson County. (IIIi)

9. Vincent P. McCarthy violated the terms of the consent order by the following acts:

(a) Engaging in acts which foreseeably could interfere with the activities and programs of MIU (IIIh) and (IIIa).

10. That the behavior of attorney, Vincent P. McCarthy, was unprofessional at best and at times bordered on the bizarre. This court can understand the behavior of Carlsen because of his interest in obtaining "converts" but it is difficult to understand how a member of the Bar could end up planning helicopter drops and other non-sensical methods of attempting to circumvent an agreement he negotiated and drafted.

The district court held the acts which violated the consent order were willful and calculated attempts to circumvent the court's order. The court ordered, among other things, that McCarthy pay a fine of $1,000 and one-third of court costs in the matter. Furthermore, the court ordered that McCarthy would not be "granted permission to practice in the Eighth Judicial District of Iowa, without making application and setting the matter for hearing with a copy to the undersigned judge." McCarthy has subsequently petitioned for writ of certiorari.

 Certiorari is an action at law testing the legality of an action taken by the district court. *Abraham v. Beeghly*, 363 N.W.2d 596, 598 (Iowa App.1984)(citing *Callenius v. Blair*, 309 N.W.2d 415, 419 (Iowa 1981)). Our review is not de novo. *Id.* We examine the evidence to ensure that proof of contempt is beyond a reasonable doubt. *Phillips v. District Court*, 380 N.W.2d 706, 709 (Iowa 1986).

 Not every violation of a court order will sustain a finding of contempt; it must be shown that there was a willful disobedience. *Abraham v. Beeghly*, 363 N.W.2d at 598 (citing *Lutz v. Darbyshire*, 297 N.W.2d 349, 353 (Iowa 1980)). To establish the

requisite willfulness, there must be "evidence of conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not." *Id.; Heishman v. Jenkins,* 372 N.W.2d 506, 509 (Iowa 1985).

## I.

McCarthy claims the consent judgment and order of permanent injunction are void because: (1) the district court lacked equitable jurisdiction prerequisites for the granting of injunctive relief, and (2) the judgment and order were not founded on the pleadings before the court and this limited the court's jurisdiction to hear a dispute. McCarthy claims that the consent of the parties did not confer jurisdiction upon the district court. Furthermore, McCarthy argues the enforcement of the order would be against public policy.

Defendants claim that McCarthy cannot collaterally attack the judgment with a writ of certiorari sixteen months after entry of the consent judgment and order of permanent injunction.

Without determining whether or not McCarthy can collaterally attack the judgment, we find the district court had jurisdiction to enter the consent judgment and order of permanent injunction and that it properly did so.

■ The district court shall be a court of law and equity. Iowa Const. art. V, § 6. The district court has exclusive, general, and original jurisdiction of all actions, proceedings and remedies, civil, criminal, probate, and juvenile. Iowa Code § 602.6101. District courts have the authority to enter consent judgments. *See* Iowa R.Civ.P. 226 ("clerk shall forthwith enter any judgment upon which all parties agree in open court, or by writing filed with the clerk ...."). A consent judgment is defined:

> Judgments by consent are contractual in nature and are, in effect, contracts of parties acknowledged in court. They do

not result from a judicial determination of the rights of the parties or the merits of the case, but are merely recitals of their agreements. Judgments by consent, nevertheless, are entered by sanction and order of the court, exercising a judicial function and power, and therefore are not to be treated as mere contracts, but, to the contrary, as adverse judgments.

*Iowa Water Pollution Control Comm'n v. Town of Paton,* 207 N.W.2d 755, 760 (Iowa 1971). The terms of the consent judgment were negotiated by the parties, and all parties were represented by counsel. We note that the plaintiffs in December 1983 petitioned to vacate the consent judgment and it was denied. Plaintiffs took no appeal.

■ An injunction may be issued in any action and need not be originally pleaded.

> An injunction may be obtained as an independent remedy by an action in equity, or as an auxiliary remedy in any action. In either case, the party applying therefor may claim damages or other relief in the same action. *An injunction may be granted as part of the judgment;* or may be granted by order at any prior stage of the proceedings, and is then known as a contemporary injunction. [emphasis added].

Iowa R.Civ.P. 320.

The district court had jurisdiction to enter the consent judgment and order of permanent injunction.

McCarthy next contends the consent judgment and order of permanent injunction violates public policy in that it is overbroad, violates his constitutional rights, and is an illegal restraint of trade. We note at this point that McCarthy alone has petitioned for writ of certiorari and does not purport to act on behalf of Carlsen or as an officer of WTS.

Without determining whether or not McCarthy can collaterally attack the judgment, we find no merit to McCarthy's argument that the consent judgment and order violates his constitutional rights or is an illegal restraint of trade with regard to his profession.

## II.

McCarthy claims: (1) the video tapes were improperly admitted into evidence, and (2) he was not given criminal procedural safeguards during his contempt proceeding. Over an authenticity objection, video tapes were admitted into evidence showing McCarthy engaged in activity allegedly violative of the consent judgment. McCarthy contends there was no person familiar with the tapes who testified the tapes were an accurate representation of what was photographed. McCarthy also argues he was called as a witness by MIU in the contempt proceedings without being informed of the potential for incarceration and his right to remain silent. However, he did not assert a privilege against self-incrimination prior to testifying and he later testified on his own behalf.

An exhibit can be authenticated several ways including testimony of a witness with knowledge, distinctive characteristics, and voice identification. Iowa R.Evid. 901. The admission of evidence is within the discretion of the district court, and we will reverse only upon clear abuse of discretion. *State v. Aswegan*, 331 N.W.2d 93, 97 (Iowa 1983); *State v. Deering*, 291 N.W.2d 38, 40 (Iowa 1980).

▇▇▇ The tapes were subpoenaed from McCarthy as an officer of WTS, and he gave them to the court. The tapes were marked by number, date, and location and were marked as the original video tapes. The tapes were played in court and were recordings of McCarthy speaking. On cross-examination of McCarthy, he agreed the portions of the video tapes played in court accurately reproduced his words. McCarthy further testified he knew of the terms of the injunction and yet he entered MIU campus anyway. This coupled with other evidence of McCarthy's willfulness is proof sufficient to uphold the finding of contempt. Without determining whether the admission of the tapes was proper, we determine it was cumulative to the record and find that its admission was harmless error.

▇▇▇ Regarding McCarthy's second argument, there was no objection made when McCarthy was called as a witness. McCarthy was represented by an attorney in the contempt proceeding and is an attorney himself. Therefore, the issue of McCarthy's self-incrimination cannot be addressed on appeal since it was waived at the district court level. *See Linge v. Ralston Purina Co.*, 293 N.W.2d 191, 195 (Iowa 1980).

## III.

Finally, we note that in the contempt order entered by district court Judge Morrison barred McCarthy from practicing law in the Eighth Judicial District of Iowa without first getting Judge Morrison's permission. This relief was not requested by MIU.

▇▇▇ Although this issue was not raised on appeal by the appellant, we elect to raise the issue on our own motion. When a court acts without legal authority to do so, it lacks jurisdiction of the subject matter. *Pierce v. Pierce*, 287 N.W.2d 879, 881 (Iowa 1980). The court's jurisdiction of the subject matter may be raised at any time and need not be raised by the parties. *Id.* at 881–82. Only the Iowa Supreme Court has jurisdiction to restrict an attorney's practice of law. Iowa Code § 610.23; *see also* Iowa Code §§ 610.6101, 602.1206. The district court exceeded its jurisdictional authority in barring McCarthy from practice within Iowa's Eighth Judicial District as part of McCarthy's contempt punishment. *See* Iowa Code § 665.4 (punishment for contempt). That provision of the district court's order is therefore void. *See Wederath v. Brant*, 287 N.W.2d 591, 595 (Iowa 1980).

WRIT ANNULLED.